Good morning and welcome to the Ninth Circuit. Welcome back to the Ninth Circuit. Judge Tallman and I are here, and Judge Nelson is in her chambers in Pasadena? Yes, good morning, Judge Fletcher and Judge Tallman. And we can hear you well. Can you hear us? Well, I can hear you very well, thank you. Well, we've got one case, Carrillo-Jaime, here as a comeback case. We've read your briefs. We look forward to your arguments when you're ready. Kathy, does this podium go down? Yes, it does. If you could put it down just a little bit, I can see you better. Button under there. There you go. There you go. Better? Perfect. Thank you. May it please the Court, good morning. David Andrew Gaona with Perkins Coie in Phoenix on behalf of the petitioner in this case, Mr. Carrillo. Your Honors, prior to the Supreme Court's decision in desk camps on Thursday, the issues raised in Mr. Carrillo's petition for review were already serious. Serious in the sense that the IJ and BIA's decision to allow the government to relitigate the 2005 conviction under the modified categorical approach were a brazen affront to this Court's authority and to important principles of hierarchy and finality. Brazen affront to our own bank decision in Aguila Monte, is that what you're saying? No, Your Honor, to this Court's decision in this case. That's what I was referring to. If it was available to the government to have on an open record, I'm not sure that they did wrong in looking to things as part of the plea colloquy under the laws that then existed. Day camp changes the law. I agree with that, Your Honor. But in terms of what the government was and wasn't allowed to do or what they should or should not have been able to do on an open record, we're not faced with an open record in this case. And the documents that the government induced on remand, assuming for a moment that they had jurisdiction, that the IJ and BIA had jurisdiction to reconsider the conviction under the modified categorical approach, were documents that the government could have obtained in 2005 when it first charged Mr. Carrillo as removable for having committed an aggravated felony for purposes of violence. It wasn't clear at that time, was it, that on a facial tailor analysis that this was categorically an aggravated felony? It was not clear at that time, Your Honor. That's correct. So wouldn't it be fair to say that the parties were focused on the categorical approach and not on the modified categorical approach or just the opposite? Well, I think there are two responses to that question, Your Honor. The first is that in the absence of any controlling authority in this circuit or even from the BIA on whether a conviction for operating a chop shop under California law is a categorical aggravated felony, the prudent thing for any litigant to do would be, especially the government in this case, would be to produce or deduce as much evidence as is necessary to sustain its burden either under the categorical approach or under the modified categorical approach if the court or the BIA going back to the agency level determines that it's not a categorical offense. The second response to that question is that the government specifically asked this court to apply the modified categorical approach in 2009. It did not have to do that. And the Fregoso case makes clear that if the government does not allege that the modified categorical approach applies, that this court's inquiry generally should end. So the government is now asking you to reconsider an issue that it brought up when it didn't have to, on which it lost, and on which it has now re-litigated again at the agency level. And that's just inconsistent with both the mandate rule and the law of the case doctrine. Let me ask you this. Assume for the moment, but this is only an assumption for purposes of the argument. I'm not asking you for a concession. Assume for the moment that the government was allowed to look at modified categorical on an open record. As I read the plea in the conviction at issue here, the only point at which police records are mentioned is when Mr. Kiriyohime's lawyer is questioned. And the question is, do you agree with the plea and with the probation violation based upon the police reports? I view that question as at least ambiguous. And if I had to resolve the ambiguity, I would... And the lawyer answers yes. It's not Kiriyohime that answers yes, it's his lawyer. If I were to resolve the ambiguity, I would probably resolve it in favor of, the lawyer said, with respect to the probation violation. Because do you agree with the plea? And with the probation violation based upon the police reports. So, if there has been, I agree that there's been a violation based upon the police reports, what does that do with respect to the conviction? Because it may be that he said, I agree based on the police reports only with respect to the probation violation. Then what do I do? Your Honor, I agree that it's ambiguous. And if the record is ambiguous, what Young makes clear is that the record is inconclusive and therefore the conviction cannot support a finding of removability in this case. Another related issue on that point is whether or not... I thought the lawyer had stipulated to the admissibility of the police reports as the factual basis for both. Again, Your Honor, I think it's because they did the... He pled to both the operating a chop shop and the probation violation as part of the same proceeding. It's less than clear as to what... That's like pleading to two different charges than either a single or two information. And we have cases that say, if the defense counsel stipulates to the admissibility of the police reports, then that becomes, in essence, binding on the defendant, whether he is specifically asked, do you also agree with what's contained in the reports or not? Isn't that right? That's correct, Your Honor. And I don't disagree with the law of the circuit on that point. I think there is no ambiguity in the lawyer saying, I stipulate to the admissibility of the police reports, then, at least prior to discams, our case law said we could look at those police reports as part of the documents that we could consider under a modified categorical approach. I think one small clarification in response to your question, Judge Tallman, is that Mr. Carrillo's attorney stipulated that the police reports served as the factual basis of the plea, not that they were admissible for any other purpose. They were simply the... That was the plea proceeding, was it not? Yes. It's not clear from the plea proceeding that the judge even had the police report in front of him at the time. He accepted the police report as the factual basis, however. The record does not contain any indication on that front. Well, let me ask you this, because I agree with Judge Tallman's statement of the law. But the question is, under what conditions or what was said by the counsel as the police reports come in? Now, I've got one place where I know that this is said. There may be others. The one that I'm aware of is AR 9293. I'll let the government find it. Does counsel for Mr. Carrillo, starting at the bottom of 92, does counsel for Mr. Carrillo concur in the plea and waive and the admission of violation of probation and stipulate to a factual basis based on the police reports? Is there any other point at which police reports are stipulated to?  Okay. My question is, okay, does he stipulate to the police reports with respect only to the violation of probation, or does he also stipulate to the police reports with respect to the underlying conviction? That's my question. And, Your Honor, you know, to me it sounds like they were part and parcel. It's a consolidated proceeding, is it not? Yes. That's essentially what it was. Which is not unusual when you have somebody who's on probation who commits a subsequent offense and it is the commission of that subsequent offense that results in the probation officer signaling the court to hail him in for a violation of his probation. Precisely, Your Honor. They did it as part of the same proceeding, and I think further down in the transcript there, Mr. Carrillo waives his right to a trial on the probation violation as part of the plea. It is essentially what he did while he was on probation that caused both the probation violation and a separate substantive violation of state law in this case. That's correct, Your Honor. Let me ask you a different question. We want to make you earn your money in this pro bono case. I appreciate that, Your Honor. Assuming that we can look at the police reports for purposes not only of the probation violation but also with respect to the conviction, what do the police reports tell us? Do they tell us that the vehicles have been stolen? They tell us he's operating a chop shop. There's a question about that and there are these vehicles around and there have been various states of sort of disarray. I got all that. Right. Do they tell us that the vehicles have been stolen because the premise for our original decision was we can't tell simply from the statute of conviction on the categorical approach whether this might have been insurance fraud. That is to say the owners of the vehicle voluntarily hand the vehicles over to the chop shop operator and falsely report them stolen. So how do we know if we know from the police reports that these vehicles were stolen rather than that they had been given to him as part of an insurance fraud? Your Honor, the simple answer to your question is that we don't. All we know is that the police reports indicate that the vehicles had at some point been reported as stolen. And there was a restitution order that was entered to at least one of the victims and there was an ignition that had been punched out, which is not consistent with somebody giving consent to have their car taken to the chop shop so they can make a false insurance claim. That's correct, Your Honor. Those two items are on the record. Those were first brought up by the government in its answering brief in this case. And under both the Navas, the Altamirano, and the Rocinos de Leon case, this court can only affirm what the immigration judge did based on the grounds that are stated in the immigration judge's order. Those two items were not found in the order. I don't quarrel with your citation of those two cases, but what I do question is how does the government prove the negative in this situation? It has affirmative evidence that supports a very common sense conclusion that the vehicles were in fact stolen under California Vehicle Code Section 10851 and that they were taken to a chop shop where the defendant then cut them up into pieces for whatever nefarious purpose. There's absolutely no evidence whatsoever that there was any hint of insurance fraud. There's nothing in the record. How does the government prove the negative? I'm certainly not a government lawyer prosecuting immigration cases, so I wouldn't pretend to know exactly how they're supposed to prove their case. Don't we review a decision by the immigration judge and the Board of Immigration Appeals and ask whether there is substantial evidence in the record to support the immigration judge's conclusion that this was in fact the criminal operation of a chop shop involving vehicles that had been stolen without the consent of their owners before they were cut up? Your Honor, my understanding of the law of the circuit is that the determination as to whether an offense is an aggravated felony under the modified categorical approach is subject to de novo review by this court. But what do we do with facts? We don't de novo. This is not a fact-finding court, counsel. This is a court of review. And I agree with that, Your Honor, and I think this is where Descamps helps this court's inquiry because what Descamps makes clear is that even under the modified categorical approach, that approach is merely a tool to be used in furtherance of the categorical approach. And as Justice Kagan wrote in the opinion, it keeps the central character of the categorical approach, which is a focus on elements and not facts. So we never get to the modified categorical approach under Descamps, do we? I agree with that, Your Honor. We can look at the statute and say this statute is indivisible and we can't know whether the vehicles were stolen or relinquished with consent. That's the end of the inquiry. I agree, Your Honor, and I believe that in that sense, at least in this circuit, that Descamps represents a watershed opinion in that respect as to whether or not it's a divisible offense. If Mr. Carrillo admitted to all the elements of operating a chop shop involving stolen vehicles under Descamps, we can't consider that. That's correct, Your Honor. Neither the judge accepting a plea nor a jury accepting a plea under this section of the California Vehicle Code is required to find that it was a theft offense. They only need to find that it was a chop shop. In the case of a jury, nine jurors could believe one way that it was fraud and three could believe it was theft. There's no specific finding that's required under California law. And under Descamps, that means it is not an element of the offense and therefore the statute is indivisible. And with that, I'd like to reserve the balance of my time. Okay. I'd like to ask another question. Yes, Your Honor. Since time is running, this is time. We'll make sure he gets enough time. All right. In your opening brief, you indicated that there should be no remand of any kind. In any event, either if we find no jurisdiction or if we find there is jurisdiction, don't we have to remand to determine your client's eligibility for 212C relief? I agree with that, Your Honor. Any remand should explicitly be for that purpose. And although an explicit remand of that nature, I believe, is not necessary. As a matter of law, I think it's necessary here to impress upon the agency and the government the import of this Court's decisions, and as the facts of this case have borne out, to help ensure that another alien is not subjected to additional years of detention because of, as in Mr. Carrillo's case, a lack of proper respect for the role of this Court in removal proceedings. So I do agree that a remand for the sole purpose of allowing Mr. Carrillo to establish his eligibility for relief under Section 212C would be appropriate. And what may the BIA consider? Just tell him and I can't hear you. I'm sorry. What may the BIA consider when it looks at this particular conviction in assessing his eligibility for 212C relief? I'm not sure I understand your question, Your Honor. Well, I mean, one of the considerations, since it's a discretionary call, is the criminal history of the applicant. Can they consider that he was, in fact, convicted of operating a chop shop and informing their decision whether to exercise their discretion under 212C, or are they now categorically barred from considering that as well? Your Honor, I see my time has expired. If I may go proceed to answer the question. Go ahead. Okay. Your Honor, Mr. Carrillo previously has admitted to the fact supporting his removability for having committed a crime of moral turpitude based on the conviction for operating a chop shop. So to that extent, the conviction will be relevant, I believe so at least, in the discretionary proceedings that should be held before the IJ on the question of whether he's eligible for 212C relief. So ultimately, he might still lose, although we don't know. That's true, Your Honor. The important thing is that, from Mr. Carrillo's perspective, is that the existence of an aggravated felony is defined by INA precludes him from seeking that discretionary relief. Right. I mean, he's no longer statutorily ineligible if it cannot be considered as an aggravated felony. Correct. And all he's seeking here on this petition for review is what he should have received after this Court's remand four years ago, which is a hearing before an immigration judge on his application for discretionary relief.  Thank you, Your Honor. Thank you. Thank you. And we will give you a chance to respond. May it please this Court, my name is Andrew Oliveira. On behalf of the Respondent, the Attorney General, Eric H. Holder. We're here today because Carrillo Jaime's convictions render him removable from the United States. And the issue is whether... Well, we're here because of my hair. And the issue specifically is whether or not his conviction constitutes an aggravated felony. This Court previously held that it is not categorically an aggravated felony, considered the modified categorical, and said on the record that it was not established. This Court then remanded for further proceedings. The board and the immigration judge correctly determined that the immigration judge was not limited to reconsidering the modified categorical approach and the new evidence that was submitted, specifically the plea colloquy and the police reports. Well, how do you explain the language that the board used in its February 1, 2010 order, Administrative Record 164, where it remanded to the immigration judge, recounting that in a decision dated July 15, 2009, the Ninth Circuit found that the Respondent's conviction did not constitute an aggravated felony and remanded the case to the board for further proceedings. So then we basically remand to the immigration judge to give the Respondent the opportunity to establish his eligibility for relief from removal. I guess my question for you is, even if our remand order was not as clear as we should have written it, the board seemed to understand what it was that we were telling it to do, but that isn't what happened in front of the immigration judge. Two responses to that, Your Honor. First, as the board explained on appeal, that unless the board specifically reserves jurisdiction, the immigration judge has full jurisdiction. And secondly, the aggravated felony issue does, in fact, go to his eligibility for relief. If he has, in fact, been convicted of an aggravated felony, he is statutorily ineligible for relief. But you would concede that at least as to the categorical approach, our prior opinion was clear that it was not categorically an aggravated felony. Correct. And the immigration judge does not even try to reconsider that. The immigration judge also does not simply try to reissue the modified categorical on the record that existed in the previous decision. In the previous decision, while you're accurate in saying we held on this record, there's no showing under the modified categorical. But those weren't precisely the words that we used. If we say on this record, I think there's an implied assumption that maybe a different record could be established. But what we wrote instead was the government has presented no evidence. In other words, the government had a chance to present evidence. The government argued to us under the modified categorical and lost. The government having had a chance to present evidence, the government on the evidence that it did present having lost and having argued on that point, in my view, the government's done. Again, two responses to that, Your Honor. One, there is no statutory or case law requirement that the government prove both the categorical issue and the modified categorical issue when the categorical issue is still open. I understand that. But the government made both arguments. We ruled against the government on both arguments. If the government had said, listen, we would like a chance to prove modified categorical with a larger record than we made below, we might say yes, although even there I think we might say, well, you had your chance. You never give these other guys two bites at the apple with evidence they could have but chose not to present on the IJ. Why should we give it to you? But the government didn't even ask for that. The government just argued modified categorical on the record the government had made and it lost. Well, again, though, when this court, there are instances where this court has, in fact, remanded after denying a modified categorical analysis and allowed the government to re-litigate the modified categorical with additional evidence. And I think the fact – And in those cases, I'm not sure which ones you're referring to, but in those cases has the court specifically said on an open record? Yes, Your Honor. And we did not in this case. This court simply said for further proceedings. And I believe by simply saying for further proceedings, this court left it to the discretion of the agency, which as the Supreme Court stated in Pottsville has as wide – No, it's so obvious. I wrote this and I now regret that I didn't sort of lock every door with double padlocks. But the whole premise for the argument the first time around was, is this or is this not an aggravated felony? Because if it's an aggravated felony, he's not eligible for 212C. If it is not an aggravated felony, he is eligible for 212C. That question has not been decided. So once we hold that it's not an aggravated felony, it's obvious that we are relanding for a 212C. Do you agree with me so far? Well, no, Your Honor, because – You mean the 212C is not open on a remand? No, I'm sorry. It's certainly obvious to me that we remanded for a consideration of 212C. The only question is whether we remanded only for a 212C. You're correct in that you did remand for a 212C, but I do not believe that the language of the decision supports the conclusion that it was only a 212C because this Court has in other examples remanded with specific instructions just for relief from removal, and this Court did not do so here. It simply said for further proceedings. And the Board, as it explains, the immigration judge had the full authority to reconsider the modified categorical after the submission of new evidence. Well, that's the question. You say they do. I'm not sure I agree with that. I guess what makes this tricky is the question that I asked your opposing counsel, and that is in the exercise of the IJ and the Board's discretion, what information may the government still consider in determining whether or not he will be given 212C relief? And the mere fact that he doesn't suffer from an aggravated felony means that he is eligible for 212C consideration, but it doesn't necessarily mean he's going to get it. That is correct, Your Honor. And apparently the immigration judge is still free to look at whatever evidence there is in the record of what he did in deciding whether or not he's a good candidate for exercise of discretion. Correct, Your Honor. The convictions themselves will still be considered by the immigration judge. The only issue is whether or not the aggravated felony statutorily prohibits him. So even a 212C relief, even if it gets remanded, he's not guaranteed any relief. Let me follow up on Judge Thomas' question, because it seems to me at one level the answer is, of course, obvious. In a consideration for 212C, the fact that he has two convictions for shop-shops are relevant. A refinement on that question is, in evaluating 212C, does the IJ get to look not just at the convictions, but at, I mean, here we go back again into some version of modified categorical. Does the IJ get to look at what he might have said or what his lawyer might have said on his behalf during the plea colloquy with respect to police reports? I don't know the answer to that question, and I'm not about to decide it. I'm inclined to think under DECAMP, or at least an extension of its reasoning, the IJ is confined to the fact of the conviction itself without regard to what underlying facts might have been pled to, but that's not in front of us, and I'm not going to decide it. I don't know the answer to it. Well, and I guess I would need to know a whole lot more about how 212C proceedings run, because, I mean, discretion can mean a lot of things, and we write a lot of opinions trying to figure out, you know, what the standards are that may or may not control the exercise of discretion at that level. I'd be frankly surprised if they can't consider more, if only because it's a discretionary call that they have to make, and the DECAMP-Taylor modified categorical analysis only is directed at the question of whether or not the conviction for a statute is or is not categorically or under the law an aggravated felony which precludes consideration at all of the relief. That is correct. I mean, just briefly on the 212C issue, it's the alien's burden to prove that he's eligible, so he has to prove that he merits it, and so in that consideration, the facts of the conviction can be considered by the immigration judge. And I think, while I say the question is not before us, I don't think the question is ever going to come before us. We don't review 212C. That is correct, Your Honor. So, I mean, they're going to do what they're going to do. I guess that's right, because if it's denied, what would we be reviewing? There would be nothing to review, Your Honor, because it's as an exercise of discretion, which this Court does not have jurisdiction over. Although counsel, he might argue equities, family, children, time here, that would be relevant on that issue, would it not? Yes. His positive equities would be something that the immigration judge would consider, but the balance of those equities, the positive versus the negative, is not something that is reviewable by this Court. Who reviews it? What's that? Who would review that? The Board would review the immigration judge's. Yes, that is correct. Thank you. So what you're describing, I think, is a fairly broad, open-ended hearing where the alien has the burden, but he can introduce all sorts of evidence to show that he should be accorded relief. That is correct, Your Honor. The government's going to be jumping up and down about the fact that he's been convicted of two felonies and so on and whatever other arguments they would have. I would assume that they would argue that among whatever else they choose to do so. Okay. Yeah, yeah, sure. But that's off to the future if we send him out. Yes, assuming that this case goes back. I would like to briefly discuss the application of the modified categorical approach and the Supreme Court's decision in Descamps. Yes, please. Yeah, we did ask you to talk about that. I think the important thing to remember about the Supreme Court's decision in Descamps is that it does not invalidate the modified categorical approach. Instead, it specifically reaffirms the modified categorical approach for divisible statutes. The Supreme Court rejected the use of the modified categorical approach in missing element cases, which was the issue in Descamps and which is what this court did in Aguilar Montes. And the statute at issue here is not a missing element statute. Rather, it's a divisible statute, which is what this court did in the first Curio Jaime decision. It went through and explained that some aspects of the conviction could meet the element of without the consent and some didn't, which is why it then considered. I understand. In fact, I just reread Descamps before coming downstairs this morning. And the court very clearly says this is an indivisible statute. And then it talks about what might happen with respect to a divisible statute. And that would be a statute under which maybe you have Arabic 1, and you can be convicted under Arabic 1 if any of the following three, A, B, C, is true. Correct. And the jury convicts under 1C. Okay. But as I understand the reasoning of the court in dealing with the distinction between divisible and indivisible statutes, I don't know that it helps here when what's happened at the plea colloquy is the addition of facts that were not necessary for the conviction that were admitted to, if that's what happened, I'll postulate for the moment that that is what happened, admissions of fact that were unnecessary for the conviction. I mean, the whole point of our dissent, and I have to say that for once I was vindicated when the United States Supreme Court overturned one of our precedents. I was in dissent in Aguila Montes for the reasons that the Supreme Court ended up agreeing with. The whole rationality is when you're in state court and you're being convicted under a statute, it's entirely relevant to your fate that you admit things necessary for the conviction. It is entirely irrelevant to your fate whether you admit things that are unnecessary. And so they'll say all kinds of stuff, or just in a general wave of the hand, of course I admit to what's in the police report as far as necessary to support the conviction. There's a lot of other stuff in there. Well, as far as I'm concerned right now, sure, go ahead. But that's what happened here. He says, OK, look at the police reports. Well, the police reports contain all kinds of stuff. But as I read the rationale of de Kamp, the fact that he might have admitted as a factual matter to things unnecessary for the conviction can't be used against him as we figure out what kind of a conviction it is. On the other hand, if all these elements about chop shop with stolen property had been in the indictment and he admitted to that, bingo, we got him. Now, tell me where I'm wrong. Well, respectfully, I think the example that Justice Kagan used regarding burglary does demonstrate that this case is a divisible statute and falls under the upheld case law of this court. Because she uses the example, and I see that my time is up, but I will answer any questions you may have, the example of a burglary that's entering a building or an automobile, and when in a plea agreement the defendant will simply agree to the fact that it was a building, but not necessarily specifically admit that it was a building, they'll agree to the police report. And Justice Kagan said that that is fine, that they don't necessarily have to admit the specific elements. They can simply just agree to the police report in her example of the burglary statute. Let me ask you the question that we got to toward the end of the argument for the other side, and that is if we look to the police reports, we will find a lot of things, including, as Judge Tolman quite correctly said, that there was a restitution order and that the ignition was punched. I guess if the ignition was punched, the restitution order may come separately. The IJ, however, relied on neither of those things. Are we confined to what the IJ relied on when the IJ looked at the police reports? Well, the IJ specifically referenced the whole police report. She mentioned the specific stuff, but she didn't mention those specifically, but she did rely on the entire police report that is in the decision, that she relied on the entirety of the police report. That she didn't highlight certain aspects does not prevent this Court from looking at those aspects. Okay. Any further questions? No further questions. If there are no further questions, we ask that this Court deny the petition for review and affirm the decision of the Board, or in the alternative, simply remand to the Board for further consideration of the Supreme Court's decision in Descal. Okay. Thank you. Would you like a minute and a half? Thank you, Your Honor. A couple of points and we'll see where I get. First, as to the last question about whether or not it would be proper to consider the punched ignition and the, I'm sorry, the punched ignition and the restitution order, the assertion just made by the government that, well, a vague reference to the police report in its entirety is enough to incorporate everything that's in the police report. I don't think that's a result that's consistent with. But you would concede, would you not, that the police report itself was in evidence before the immigration judge. So the question I think we're asking is whether or not the immigration judge has to specifically cite those two items from the police report, or if it's sufficient to say, you know, I'm relying on the police report for my finding under the modified categorical approach that this is an aggravated felony. Your Honor, I think under Navas and Altamirano and Racinos de Leon, the latter hypothetically proposed would be inappropriate. I think that the, what the Chenery principle is, is that the court should not be relying on counsel's post hoc rationalizations on appeal about what the IJ may or may not have considered. That what we should be looking at and what we is properly looked at is what the IJ actually says. And here we know plainly that the IJ relied only on two explicit grounds. And those are the only two grounds on which, if the court chooses to get there, that the IJ's decision under the modified categorical approach should be reviewed. One point on the fact that the previous opinion in this case said, referred to on this record at several points that the government cited to at length in its answering brief. If you look at other cases remanding under the modified categorical approach, I'm sorry, after applying the modified categorical approach, they use almost the exact same language. That's Suazo-Perez, Ruiz-Vidal, and Tocatli. And if the government's position is correct, then the government was free in all of those cases to go back and re-litigate that issue again. And that is simply inconsistent with the mandate rule in the law of the case doctrine. And I see that my time has expired, and I'd ask that the court grant Mr. Carrillo's petition for review and remand this case to the BIA to allow Mr. Carrillo to seek relief under 212C. And to make the remand order explicit? Again, Your Honor, though not required by law, let's try to avoid this situation in the future and make it explicit, if you could. Okay. Thank you very much. Thank you. Thank you. Before we adjourn for the day, first I'd like to thank pro bono counsel, the Perkins firm, win or lose. We very much appreciate work like this. It makes our job much, much easier. And I'd like to compliment both counsel, very nice arguments on both sides. And that completes the argument for today. It's now under submission. Thank you.
judges: Nelson, Fletcher, Tallman